**SO ORDERED.**

**SIGNED this 19 day of September, 2008.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:                                     )
                                           )
RAFTER SEVEN RANCHES, LP,                  )    Case No. 05-40483
                                           )    Chapter 12
                    Debtor.                )
_____)

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR STAY

This matter is before the Court on the motion of Debtor Rafter Seven Ranches, LP's ("Rafter Seven") to stay all proceedings in this Chapter 12 case.[1] Rafter Seven requests a blanket stay of all proceedings until a final order is entered in its recently filed appeal of the Court's orders denying Rafter Seven's Motion for Actual Damages, Attorney Fees, Costs and Punitive Damages[2] and granting WNL Investments, L.L.C.'s ("WNL") Motion to Enforce

_____

[1] Doc. 454.

[2] Doc. 429 entered July 15, 2008.

Settlement Agreement.[3] All impacted parties have filed responses, and the Court is prepared to rule.

## I. FINDINGS OF FACT

Rafter Seven has asked the Court to stay all matters in this case pending the outcome of two appeals from orders recently entered by the Court. The only pending matters in this case are confirmation of Debtor's Chapter 12 Plan, filed August 22, 2005,[4] and Creditor C.H. Brown's Motion to Remove Debtor-in-Possession for Cause, or in the Alternative to Convert the Case to a Case Under Chapter 7.[5]

On July 15, 2008, after concluding an evidentiary hearing, the Court entered a Memorandum Opinion and Order denying Rafter Seven's request for sanctions for an alleged violation of the automatic stay.[6] In that opinion, which included approximately twelve pages of factual findings, the Court found that Rafter Seven had failed to demonstrate that a stay

---

[3]Doc. 432.

[4]Doc. 71. Five parties in interest filed an objection to the plan: Internal Revenue Service (Doc. 106), WNL, LLC (Doc. 105), C.H. Brown Company (Doc. 104), East Ridge Villa Association of Condominium Owners (Doc. 103), and the Chapter 12 Trustee (Doc. 98). The Plan called for disputes between WNL and Debtor to be resolved in the context of the confirmation hearing. Thereafter, WNL and Debtor entered into a settlement in lieu of a contested hearing. The terms of that Settlement Agreement have now been appealed twice to the Bankruptcy Appellate Panel, and there is no final order regarding the dispute with WNL. This has left the plan up in the air for three years while Debtor litigates with several claimants. The plan currently on file is not confirmable, because it contemplates trial of issues that have been settled or otherwise made moot by events occurring during the three years since the plan was filed (e.g., whether there is an equitable mortgage between it and WNL and the balance due WNL, the treatment of East Ridge Villa Association, and the assumption of a lease with Mr. Huelskamp (made irrelevant by the sale of real property)).

[5]Doc. 447 filed August 1, 2008.

[6]Although Debtor asserted various theories, as this Court's Memorandum and Order (Doc. 429) details, essentially the stay violation Debtor alleged was that WNL, the undisputed owner of the land, allowed Koster, the purchaser at the sale of the land, to plant a 2007 crop and then to keep the proceeds from that crop when it was harvested. Debtor's theory was that one sentence of the Settlement Agreement between Debtor and WNL required turnover of those proceeds.

2

violation has occurred. In addition, the Court concluded that even if Rafter Seven had been able to meet its burden of proving a stay violation, it would not be entitled to any damages for two reasons. First, the Court held that 11 U.S.C. § 362(h)[7] was inapplicable to this Debtor, a limited partnership, because that subsection only applies to individual debtors. Second, the Court held that it would not be equitable to exercise the Court's inherent powers under § 105 to award damages to Debtor under the specific facts of this case.

The Court also entered a Memorandum Opinion and Order granting WNL's motion to compel Rafter Seven to comply with the provisions of the parties' joint Settlement Agreement, which included a prohibition against Rafter Seven taking any additional action to create any lien or encumbrance on the title to Tract 3, the subject real estate. Rafter Seven has appealed both of those orders to the Tenth Circuit Bankruptcy Appellate Panel.

On August 1, 2008, creditor C.H. Brown ("Brown") filed a motion to remove Rafter Seven as the debtor-in-possession for cause, or in the alternative, to convert this case to a case under Chapter 7 of the Bankruptcy Code. In support of this motion, Brown contends that this case has now been pending for over three and one-half years without a confirmable plan. Despite the fact that this case has been on file for such a lengthy period of time, Brown contends that Rafter Seven has failed to conduct any farming operations and has failed to earn any income from farming except for income from a 2006 crop grown on property

---

[7]This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references to the Bankruptcy Code are thus to 11 U.S.C.A. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified. Section 362(h) was renumbered following the passage of BAPCPA, and is now numbered § 362(k)(1).

3

formerly owned by Rafter Seven. That income was then improperly diverted to separate trusts owned either by Rafter Seven's principal or his children, rather than being deposited into the Debtor's Chapter 12 account.

In addition, Brown contends Debtor has failed to make any payments to creditors during this time, has failed to propose a confirmable plan, and does not appear likely to be able to propose a confirmable plan in the foreseeable future. Brown seeks relief based upon its contentions that Rafter Seven has failed to timely file required reports and failed to timely file a confirmable plan, while grossly mismanaging Rafter Seven's business, including, but not limited to, opting to not engage in any family farming operations for the prior three and one-half years.

## II. STANDARD FOR REVIEWING A MOTION FOR STAY

Rafter Seven is seeking a stay of all proceedings in this case pursuant to Fed. R. Bankr. P. 8005. In evaluating a motion for stay pending appeal, the Tenth Circuit Bankruptcy Appellate Panel has enunciated four factors this Court must consider:

(1) The likelihood that the party seeking the stay will prevail on the merits of the appeal;

(2) The likelihood that the moving party will suffer irreparable injury unless the stay is granted;

(3) whether granting the stay will result in substantial harm to the other parties to the appeal; and

(4) the effect of granting the stay upon the public interest.[8]

---

[8] *Lang v. Lang (In re Lang)*, 414 F.3d 1191, 1201 (10th Cir. 2005).

Essentially, the standards are the same as seeking injunctive relief.

As the party seeking the stay, Rafter Seven bears the burden of showing that it is entitled to the stay.[9] "A motion for stay pending appeal under Rule 8005 is an extraordinary remedy and requires a substantial showing on the part of the movant."[10] "It is the movant's obligation to justify the court's exercise of such an extraordinary remedy."[11] "'Because the burden of meeting this standard is a heavy one, more commonly stay requests will not meet this standard and will be denied.'"[12]

**III. ANALYSIS**

As noted above, Rafter Seven is appealing two orders entered July 15, 2008. The first motion denied Rafter Seven's request for damages resulting from an alleged stay violation for the planting, harvesting and/or sale of a 2007 wheat crop located on Tract 3. The second order granted WNL's motion to require Rafter Seven to comply with the parties' Settlement Agreement, specifically by prohibiting Rafter Seven from engaging in any further conduct that would encumber the title to the land.

The Court will limit this decision only to arguments worthy of discussion. The fact that an issue is not specifically addressed does not mean that the Court failed to consider that

---

[9]*In re Sunflower Racing, Inc.*, 225 B.R. 225, 227 (D. Kan. 1998).

[10]*In re F.G. Metals, Inc.*, 390 B.R. 467, 471 (Bankr. M.D. Fla. 2008) (internal quotations omitted).

[11]*First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 163 F.R.D. 612 (D. Kan. 1995) (internal quotations omitted).

[12]*Id.* (quoting 11 Charles A. Wright, *et al.*, *Federal Practice and Procedure*, § 2904 at 503-05 (1995)).

5

argument, only that the argument is not well taken, or irrelevant to the decision, and thus requires no additional analysis.[13]

### A. Likelihood of Success on the Merits

Rafter Seven raises several arguments in support of its contention that it will likely succeed on the merits of its appeals. First, Rafter Seven contends it will likely succeed because the Court's pretrial procedure was flawed. Specifically, Rafter Seven takes issue with the Court's denial of its oral request to add claims or parties first made at the final pretrial conference, noting that "no dates for amendments or to add additional parties were included in the scheduling order." Rafter claims that it "might well have added additional parties . . . or amplified its stay violation contentions" had the Court allowed it to amend its claims at the final pretrial conference.

The Court finds that the pretrial procedure used in this case, to which Rafter Seven never objected, does not provide a likely basis for reversal of the Court's orders. First, Debtor apparently forgets that early on, it amended its original Motion for Damages in this very case, without seeking or receiving court permission.[14] Neither the Court nor any party complained. Second, this Court routinely allows the lawyers in a contested matter to recommend to the Court what pretrial procedures the underlying dispute requires. To that

---

[13]Although such a qualification should be unnecessary, the Court finds it necessary, in light of the approach to litigation taken by Rafter Seven throughout this proceeding, to expressly note that it has, in fact, considered each of the arguments made. Two judges have now handled this bankruptcy, and Debtor has now claimed that both judges have a bias against it or its principal, so additional caution is required.

[14]Doc. 331 amended by Doc. 346.

6

end, the Court has developed a simple Report of Parties' Planning Meeting form[15] that can be adapted by counsel to fit the dispute. The lawyers can ask the Court to adopt their joint recommendations on pretrial scheduling matters, or can ask for a full-blown Scheduling Conference. The trial judge then ultimately uses his or her own judgment, after reviewing the Report and the relevant pleadings, to schedule further proceedings in the case.

When Debtor originally filed the motion asserting the stay violation, the first judge assigned to this case issued a notice setting the matter for a Scheduling Conference.[16] That notice requires counsel to jointly work out a Report of Parties' Planning Meeting. That Report, and a Scheduling Conference, are creatures of Rule 16 of the Federal Rules of Civil Procedure, parts or all of which this Court often uses in contested matters, again depending on the relative complexity of the matter. Rafter Seven participated in the preparation of that Report, without raising any objections, and filed the report with the Court.[17] In that Report, neither he nor any other counsel requested the opportunity to amend pleadings or add parties, even though there is a place on the Court's Report form that allows parties to so request when any party believes such amendments/additions of parties is possible or likely to be needed.[18]

The parties jointly requested a discovery cutoff of January 31, 2008, noting the possibility of a problem getting some government records. The parties then specifically

---

[15]*See* attachment to Doc. 336.

[16]Doc. 336.

[17]Doc. 349.

[18]Paragraph 11 of the Report follows: Special issues: [If you are aware of discovery, settlement, or other issues that might dictate how this case should be handled, please address those issues here.]

7

waived their right to meet with the trial judge to discuss any issues about pretrial scheduling at the Scheduling Conference set for the next week. Accordingly, the conference was canceled and a Scheduling Order was entered. That Scheduling Order adopted the deadlines requested by the parties, and a final pretrial conference was scheduled for February 28, 2008. Before the discovery cutoff, Debtor sought an extension of discovery, which was unopposed and granted. Debtor never similarly moved to amend its pleadings or to add parties.

The parties could not agree on a Pretrial Order, so the Court held a conference on February 28, 2008 to discuss all pending issues in an to attempt to get an order entered. This was the first time that Debtor contended it needed to amend the pleadings to add a claim for the 2008 wheat crop, relying on the identical legal theory Debtor was using to claim the proceeds of the 2007 wheat crop. At this point, the 2008 wheat crop had been planted but had not yet been harvested. Since Debtor's true theory behind the alleged stay violation seems to be that the gross proceeds from any harvest have to be handed over to Debtor, and there were no proceeds from the 2008 harvest in January 2008, the Court denied this request as untimely, and declined to delay getting to the merits of Debtor's legal theories relating to the 2007 wheat crop by allowing the amendment.

The Court also noted that the 2008 crop had been planted months earlier—likely before Debtor even filed the motion, but certainly during the discovery period agreed to by all parties. Debtor well knew the crop had been planted and by whom, and Debtor had not earlier sought the amendment to include the 2008 crop. Notwithstanding this decision to not allow inclusion in the Pretrial Order of the claim for an alleged stay violation for the 2008

8

crop, the Court did hold that Rafter Seven could nevertheless later bring any claim it ultimately had to the 2008 crop. In other words, the Court's decision to deny an amendment that could have delayed getting to the merits on the alleged stay violation that had been the subject of several months of discovery was without prejudice to later asserting the claim.

For these reasons, the Court does not understand how this decision prejudiced Debtor. Debtor was relying on the same theory why the expected harvest of the 2008 wheat crop would purportedly violate the stay as it was using regarding the 2007 wheat crop, so if the Court ruled in Debtor's favor, it would be a rather simple matter of filing a similar claim for 2008, and only the amount of any damages would have to be determined. Again, the damages could not be ascertained until after the wheat was harvest, expected the following June or July. The Court's decision to not allow Debtor to possibly delay the trial with this amendment thus has no bearing on whether there was a stay violation relating to the 2007 wheat crop.

Debtor also contends it was prejudiced by the Court's decision to not allow it to join additional parties at this late date—after discovery was set to close. Debtor suggests it might have added Southwest Ag and Perry Hanson. Again, allowing this amendment would not have changed the outcome of this matter, and thus does not provide a basis for Debtor's claim it will succeed on the merits of its appeal.

First, despite Koster's protestations throughout the discovery and pretrial process that he was not the proper party, because a partnership by the name of Southwest Ag had actually done the planting and harvesting, and Koster held only a fractional interest in that

9

partnership, Debtor insisted that Koster was the correct party. In the version of the Pretrial Order that Debtor's counsel requested the Court adopt, for example, it stated that " In addition, it is expected that an issue may be raised by Koster that he is not the proper party to this matter. Debtor contends that discovery has shown that Koster is the proper party because the crop was planted by him and harvested by him or his alter ego Southwest Ag. Farm Service Agency information may clarify the situation."[19]

    For Debtor to now assert it was error for the Court to decline to allow it to add these same potential additional parties that it argued "discovery has shown" are **not** the proper parties seems more than a bit disingenuous. Debtor also insisted during the formation of the Pretrial Order that receipt of certain documents from the Farm Services Agency, that it admittedly had some difficulty obtaining before the discovery cutoff, would confirm who the proper parties should be.

When FSA finally provided the documents, before the Pretrial Order was entered, Debtor's counsel admitted that those documents did not assist on the issue of who were the proper parties. The Court gave each party the opportunity to make final written comments on the proposed Pretrial Order before it was entered; Debtor's counsel stated: "Based on the court's ruling that some nexus should be shown between any amendments or the addition of

---

[19]Doc. 381, p.13.

10

a party and the information recently received from the Farm Service Agency, no amendments or additions of parties will be made."[20]

It is highly unlikely that Debtor will prevail on appeal with its "procedural defect" theory, because Debtor never objected to the procedure, because Debtor was not harmed by the procedure, and because Debtor insisted, after discovery was complete, that it had named the correct parties. Further, as to the inclusion of a claim for the 2008 crop year, the decision to not allow the claim at that point was without prejudice to asserting it after the decision was entered regarding the 2007 crop year. In addition, the result would have been the same since Debtor is using the same theory for why failure to turn over the gross proceeds from the 2008 harvest is a stay violation as it did for the 2007 year. Finally, had the Court found that a stay violation had occurred for the 2007 crop year, and that Rafter Seven was entitled to damages, then Rafter Seven's belief that it should have been allowed to add additional parties may have been relevant, as those additional parties could theoretically have entitled Rafter Seven to receive additional damages. However, the addition of those parties to the case would not have had any impact on the finding that no stay violation occurred in the first instance. Accordingly, this procedural defect claim is not at all likely to result in a reversal of the Court's order.

---

[20] Doc. 387, page 2, ¶3. The Court required a nexus, because Debtor's counsel contended that the reason he had not been able to earlier amend was because he was having trouble getting the FSA documents. When the FSA documents turned out to be completely irrelevant to amending its claim and adding parties, Debtor had no basis for claiming that it could not have earlier sought the amendments.

11

Rafter Seven next contends that it is likely to succeed on the merits of its appeal because the Court's factual analysis was flawed. The Court thoroughly reviewed the undisputed factual information submitted by the parties in support of their summary judgment motions and decided there were some factual disputes requiring evidence. The Court then conducted an evidentiary hearing during which the Court heard evidence regarding the contract [Settlement Agreement] that required interpretation, and weighed the credibility of the witnesses who were involved in negotiating that contract. Rather than "cherrypick" evidence that favored WNL, as Debtor charges, the Court instead relied upon the evidence it found to be the most credible and relevant to the underlying purpose of the contract being interpreted. Frankly, after hearing the testimony and evaluating the credibility and demeanor of the witnesses, it was not even a close decision. Accordingly, Rafter Seven has not presented any arguments that lead this Court to believe that any appellate court would find it abused its discretion when making its factual findings and credibility determinations in this case.[21] Therefore, the Court finds that Rafter Seven is highly unlikely to succeed on its appeal based upon the allegation that the Court made incorrect factual findings.

Rafter Seven next contends that the Court's legal analysis was flawed. The first argument offered in support of this claim is that the Court improperly placed the burden for

---

[21] *See In re Medical Management Group, Inc.*, 302 B.R. 112 (10th Cir. BAP 2003) (noting that findings of fact are reviewed under an abuse of discretion standard). Under the abuse of discretion standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994). "'The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *Lang v. Lang (In re Lang)*, 305 B.R. 905, 908 (10th Cir. BAP 2004) (quoting *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 608 (6th Cir. 2000)).

calling attention to a stay violation on Rafter Seven. Rafter Seven misconstrues the Court's opinion on this issue. The Court held that there was no stay violation, but even if there was a violation, Debtor's actions were such that it was not entitled to equitable relief from this Court. Rafter Seven did not have to notify the alleged violators of the claimed stay violation, and the Court never held otherwise. However, if a debtor comes before a court seeking equity under § 105, then the court is entitled to, and should, review that debtor's own conduct to make sure that it is deserving of the court's equity. In this case, Rafter Seven opted to keep secret its belief that there had been a stay violation until the point when it could be most financially advantaged by making the claim. The Court found that that decision, among others, demonstrated that Debtor did not deserve the Court's equity.

Rafter Seven also asks the Court to reconsider its legal position that § 362(k), by its own terms, only applies to stay violations committed against individual debtors. Rafter Seven suggests this Court should ignore clear statutory language created by Congress in favor of an interpretation based upon policy arguments. Rafter Seven offers no new arguments or authorities that were not previously considered by the Court. The Court finds that because its decision upholds the clear language of § 362(k),[22] this decision is also unlikely to be reversed on appeal.

Because Rafter Seven has wholly failed to establish that it is likely to succeed on the merits of its appeal, it is not entitled to a stay of proceedings.

---

[22]*See Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) (holding that "It is well established that when the statute's language is plain, the sole function of the court—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotations omitted).

### B. The Likelihood that Rafter Seven will Suffer Irreparable Harm

The next element Rafter Seven must demonstrate is that it will suffer irreparable harm if a stay is not granted. Under the Settlement Agreement between WNL and Rafter Seven, which was central to this Court's decisions, WNL was deemed the complete and sole owner of a tract of land commonly referred to during the trial as "Tract 3." WNL was required under that agreement to sell that land, along with two other tracts, and use the proceeds to pay down the $240,000 debt that the parties agreed Rafter Seven owed WNL. Any excess from the sale of that land was to be returned to Rafter Seven.

Rafter Seven contends that it will be irreparably injured if WNL is allowed to proceed with the sale of Tract 3 because there will be additional auctioneer fees and advertising expenses deducted from the sale proceeds that will diminish the amount that must be returned to Rafter Seven. The Court finds that this is an insufficient basis for instituting a stay. First, it is generally held that monetary damages, alone, do not constitute "irreparable injury" necessary for the imposition of a stay pending appeal.[23] In addition, no one has ever argued—nor could they pursuant to the clear terms of the agreement, that Tract 3 need not be sold by WNL. Nothing in the pending appeals is going to prevent the sale of Tract 3, which will include the expenses of that sale such as auctioneer fees and advertising. Rafter Seven's claims, which are currently on appeal, seek monetary damages against WNL for an alleged violation of the automatic stay. Even if Rafter Seven is successful on appeal and

---

[23] See In re F.G. Metals, Inc., 390 B.R. at 477.

receives the relief it is seeking, it will be entitled only to monetary damages—not a revision of the Settlement Agreement that clearly calls for the sale of the land.[24]

The second issue currently on appeal concerns the Court's order requiring Rafter Seven to comply with the parties' Settlement Agreement, which unequivocally prohibits Debtor from doing anything to cloud the title to Tract 3. Rafter Seven has made no argument how it will be irreparably harmed if the Court's order enforcing that provision is not stayed. Further, the Court ordered that the "notice" that Debtor previously filed, in violation of the Settlement Agreement, and which appears to have had the effect of clouding the title, be deemed a nullity by the applicable Register of Deeds. Again, Debtor does not indicate how it will be irreparably harmed if that order is not stayed pending appeal. In fact, Rafter Seven has consistently and repeatedly stated that the "notice" that its principal admittedly filed on its behalf was not intended to be a cloud on that title, but instead was simply to "let the public know" that a potential claim might be present. Given Rafter Seven's stance that the "notice" was neither intended to cloud the title to Tract 3 nor affect the sale of Tract 3, the Court fails to see how Rafter Seven could claim that it would be irreparably harmed if that order is not stayed.

Rafter Seven also contends that it will be harmed because it will be forced to incur additional legal fees and expenses defending the motion filed by C.H. Brown while the

---

[24]The unstated irreparable harm is that Tract 3 has been in the family of Rafter Seven's principal for many years, and that its principal has an understandable emotional attachment to the land. But there is absolutely no evidence before this Court—and Debtor doesn't even try to make the argument—that the farming of this particular quarter section would result in the generation of sufficient income to fund a Chapter 12 plan, while the farming of another similar tract, which Debtor could purchase or lease with its current assets or the claimed damages from the stay violation, would not generate similar income.

15

Case 05-40483    Doc# 473    Filed 09/19/08    Page 15 of 20

appeal of the Court's orders is pending. Although C.H. Brown does make reference in its motion to the Court's rulings that are being appealed by Rafter Seven, those opinions do not form the sole or main basis for C.H. Brown's request to have Rafter Seven removed as the debtor-in-possession or to have the case converted to a Chapter 7 proceeding. The outcome of the appeals will almost certainly have no impact on C.H. Brown's motion that is currently before the Court, and Rafter Seven will not be irreparably harmed if that issue is allowed to proceed while its appeals on the other two issues are pursued.

The Court finds that Rafter Seven will not be irreparably harmed if the Court's decisions are not stayed pending appeal.

### C. The Likelihood of Harm to Other Parties

The third issue the Court must consider is whether any other parties will suffer irreparable harm if a stay is granted. Whether purposeful or not, the motion to stay, if granted, could have the effect of impeding the sale, and potential use, of Tract 3 for months or years. WNL entered into an agreement with Rafter Seven in January 2006 where Rafter Seven unequivocally admitted WNL is the sole owner of that Tract, and that provided for the sale of that land if Debtor did not pay it a sum certain by an agreed date. Rafter Seven agreed that WNL has the absolute right to sell the property and to apply the net proceeds from the sale against the debt Rafter Seven admittedly owes it. Whether Debtor is allowed to obtain monetary damages for a stay violation will not change that fact.

16

However, if a stay is granted, WNL will be forced to continue holding the land, paying taxes on it, and losing the time value of money[25] while an appeal(s) is heard. Again, those appeals will not ultimately prevent the sale of the land, regardless of outcome. Although monetary damages are generally not sufficient to show irreparable injury, it is relevant to consider, when evaluating the relative harm to the parties, that WNL stands to suffer the same type of injuries if a stay is entered as Rafter Seven claims it would suffer if the stay request is denied.

As for C.H. Brown, it, as well as all other creditors, has a right to have the issue of whether Rafter Seven should be removed as debtor-in-possession or whether the case should be converted to a Chapter 7 proceeding heard in a timely manner. The allegations against Rafter Seven in that motion involve, in large part, allegations that Rafter Seven has failed to engage in any farming operations, has failed to provide any payments to creditors, and has failed to propose a confirmable plan in over three years. Rafter Seven wants to delay resolution of these issues while its appeal relating to the alleged stay violation by WNL and Koster makes its way through the appellate process.

But this case has already been allowed to proceed more slowly than Congress ever envisioned for a Chapter 12 case.[26] Requiring all litigation, and maybe the sale of Tract 3,

---

[25]Because the parties contemplated the property would be sold by July 2006, the Settlement Agreement does not provide interest to WNL on the $240,000 debt.

[26]11 U.S.C. § 1221 provides that a Chapter 12 plan shall be filed within 90 days, although that date can be extended for cause. Section 1224 states that a confirmation hearing shall be concluded no later than 45 days after the filing of the plan, although again that deadline can be extended for cause. Thus, in drafting the provisions of Chapter 12, Congress intended that a Chapter 12 plan should be confirmed within 135 days of the date of filing, absent cause for extending that time frame. This case was filed on March 7, 2005 and the plan was filed 168 days later on August 22,

17

to come to a complete stop while Rafter Seven prosecutes these two appeals, which are in large part unrelated to the motion brought by C.H. Brown, would cause harm to C.H. Brown (and potentially other creditors) that could not be remedied by any form of damages. Therefore, C.H. Brown would incur irreparable harm if the Court were to grant Rafter Seven's motion for stay.

### D. Public Policy

The final issue that must be decided by the Court is whether granting the requested stay would be against public policy. Because Rafter Seven seeks to stay the entire Chapter 12 proceeding, including any hearing that might address the Court's concern, noted in its Memorandum and Opinion, that Debtor's principal admitted to having diverted estate assets to others, the Court cannot find that granting the stay would be in the public's interest.[27] If there has been a conversion of estate assets, which was effectively admitted during a sworn deposition, this is not an issue that should await an appeal on an entirely unrelated matter.

In addition, as noted above, the public's interest in seeing this case proceed in a timely fashion cannot be ignored. The Court finds that there is no just cause for a blanket stay of

---

2005 after Rafter Seven received an extension of time to file its plan. It has now been 1,291 days since this case was filed. That means this case has already taken 1,156 days (or just over 3 years) longer than Congress intended when it set the deadlines for a Chapter 12 proceeding, and there is no confirmable plan on file.

[27]As the Court noted in footnote 14 of its Memorandum and Order, Doc. 429, "Although the Trusts expressly relinquished whatever interest they had in the subject real estate, as noted in § 4(i) of the Court's Order, which fact was acknowledged when Mike Friesen approved the Settlement Agreement in his capacity as the Trusts' representative, Mike Friesen nevertheless gave the money received from the 2006 wheat crop, pursuant to the terms of the Settlement Agreement, to the Trusts, and failed to report that income to the Chapter 12 Trustee. When WNL and Koster's counsel caught him doing this, he stated (during his deposition) that if 'it's going to become a big deal' he'd return the money to the estate." See Exhibit 2 to Koster's Memorandum in Support of Summary Judgment, at page 75 of deposition (page 19 of Exhibit 2).

18

all proceedings in this entire case pending these appeals. Debtor can certainly estimate and then disclose to its creditors, within a plan of reorganization, the potential damages it estimates it will receive if it ultimately succeeds on its appeal for damages for a stay violation, since evidence was received at trial about those potential damages. Debtor can then formulate a plan that provides for the disbursement of those proceeds in the event it prevails on appeal. There is no good reason why Debtor, during the appellate process, should not proceed towards either getting a plan confirmed, or converting the case if it cannot do so, and the Court finds that the public interest in promptly processing bankruptcy petitions[28] would be harmed by granting the stay requested by Rafter Seven.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Rafter Seven's request for a stay must be denied. Rafter Seven has failed to show that it is likely to succeed on the merits of its appeal, that it will suffer irreparable injury if a stay is not granted, that there would not be irreparable harm to other parties if the stay were granted, or that public policy would not be harmed by the granting of the stay. Having failed to meet any of the four requirements for the granting of a stay pending appeal, the Court denies Rafter Seven's motion for entry of a stay. For the same reasons, the Court elects to issue this opinion, instead of granting Debtor's motion for additional time to supplement its response after review of transcripts. It can make those arguments to the appellate court, if it elects to pursue the matter.

---

[28] *See Desktop Images, Inc. v. Ames*, 930 F. Supp. 1450, 1452 (D. Colo. 1996) (stating that "[p]ublic policy dictates the timely conclusion of legal disputes" as a basis for denying a motion for stay pending appeal).

**IT IS, THEREFORE, BY THE COURT ORDERED** that Rafter Seven Ranches, LP's Motion to Stay All Proceedings is denied.

###