**SO ORDERED.**

**SIGNED this 08 day of January, 2009.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RAFTER SEVEN RANCHES, LP, | ) | Case No. 05-40483 |
| | ) | Chapter 12 |
| Debtor. | ) | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO RECUSE**

The Motion to Recuse[1] filed by Debtor, Rafter Seven Ranches, is before this Court for decision. Given the close proximity between the filing of this motion and the trial on the Motion to Remove Debtor-in-Possession for Cause or in the alternative to Convert the Case to a Case Under Chapter 7,[2] filed by Creditor C.H. Brown, C.H. Brown has not had the

---

[1]Doc. 514.

[2]This Motion was filed August 1, 2008 as Doc. 447.

opportunity to respond to this recusal motion. Because of the imminent trial date,[3] however, the Court finds it appropriate to issue this ruling without awaiting a response.[4]

The motion relies solely on 28 U.S.C. § 455, and provides no case law support, nor the standards this Court must apply, in evaluating the motion. Instead, Debtor summarily suggests that adverse rulings, including those concerning the credibility of witnesses that have appeared before the Court in connection with this case, evidence bias by the assigned judge. Debtor indicates that "[t] reason for such bias is unknown, but the actions of the Court in trials, pretrials, and scheduling conferences have all indicated that such bias does exist." Debtor does not provide the Court with any concrete examples of such "actions" except for one, noted below.

Debtor also claims that the judge has already "decided" an issue that is still to come before her, implying that this judge has prejudged issues on which no evidence has been received. Finally, Debtor suggests that the assigned judge <u>may</u> be biased because she <u>may</u> have visited with the former judge assigned to this case, whose impartiality and fairness Debtor's principal also questioned. That suggestion implies that this judge is either incapable of reaching decisions on her own, without consulting the prior trial judge, or that the prior

---

[3]The trial is on C.H. Brown's motion, Doc. 447.

[4]Motions to recuse should be filed "at the earliest possible time after the facts are discovered." *First Interstate Bank of Arizona v. Murphy, Weir & Butler*, 210 F.3d 983, 989 n.8 (9th Cir. 2000). The main bases for this motion relate to decisions made in July, 2008 (Doc. 429) and September 2008 (Doc. 472), and one purported comment made in a Scheduling Conference. Although the Court is unsure to which date Debtor refers, there was a Scheduling Conference on September 23, 2008. Debtor then waited almost three months to even raise this issue with the Court, orally through counsel, on December 19, 2008.

2

trial judge would not only desire to influence this trial judge's opinions but also would actually attempt to influence the trial judge's opinions and did so in this case.[5]

Under 28 U.S.C. § 455, motions to disqualify are core proceedings[6] addressed to the trial court, to the person whose impartiality is questioned, and that person rules on the issue. Since the motion is a core proceeding, the matter need not be referred to the district court for a final order. Accordingly, this Court has jurisdiction over this core proceeding.[7]

## Applicable Law

Federal Rule of Bankruptcy Procedure 5004(a), through incorporation of 28 U.S.C. § 455, provides for disqualification of a bankruptcy judge from either the entire case or a proceeding within a case, under certain conditions. "Title 28, section 455(a) of the United States Code provides that '[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.' ... Under this standard, '[t]he trial judge must recuse himself when there is the appearance of bias, regardless of whether there is actual bias.'"[8] "The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." The Court is to consider the totality of the circumstances when reviewing such

---

[5]This judge has no reason to think the prior trial judge has any desire to influence her decision on the issues (or witnesses) in this or any other case, and he has certainly made no attempt to do so here.

[6]28 U.S.C. § 157(b)(2)(A) and *In re Betts*, 143 B.R. 1016, 1022 (Bankr. N.D. Ill. 1992).

[7]28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).

[8]*United States v. Lang,* 364 F.3d 1210, 1217 (10th Cir. 2004) *vacated on other grds*, 543 U.S. 1108 (2005) (*citing Bryce v. Episcopal Church of Colo.*, 289 F.3d 648, 659 (10th Cir.2002)).

3

claims, disregarding "the judge's actual state of mind, purity of heart, incorruptibility, [and] lack of partiality."[9]

The Supreme Court thoroughly considered the issue of bias in *Liteky v. United States,*[10] a criminal case which nevertheless has application here. That Court held as follows:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.[11]

Accordingly, a party, or the debtor in a bankruptcy proceeding, is not entitled to a new judge every time he or she loses a contested matter or an adversary proceeding within the context of that bankruptcy proceeding.[12]

---

[9]*Id.*

[10]510 U.S. 540, 550-51 (1994).

[11]*Id.* at 551-52 (citations omitted).

[12]*Frates v. Weinshienk*, 882 F.2d 1502, 1506 (10th Cir. 1989) (holding that improper or incorrect rulings are grounds for appeal, not recusal).

4

"Under section 455(a), the judge is under a continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality."[13] Clearly, if a judge believes his or her impartiality might reasonably be questioned, the judge has an obligation to recuse. "On the other hand, a judge has as much obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true."[14] In addition, because cases interpreting § 455(a) are extremely fact driven, they "must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."[15]

A non-exhaustive list of factors that will ordinarily not satisfy the requirements for disqualification under § 455(a) include:

> "(1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in

---

[13] *U.S. v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994) (*citing United States v. Hines*, 696 F.2d 722, 728 (10th Cir.1982) and *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995) (holding that it is "settled principle that a judge has as strong an obligation not to recuse when the situation does not require as he has to recuse when it is necessary.")).

[14] *Id*. (*citing City of Cleveland v. Cleveland Elec. Illuminating Co.*, 503 F. Supp. 368, 370 (N.D. Ohio 1980)).

[15] *United States v. Jordan,* 49 F.3d 152, 157 (5th Cir. 1995).

5

fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge."[16]

Furthermore, when reviewing a charge of bias lodged against a judge, the Supreme Court has counseled, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."[17] Finally, the movant bears the burden of demonstrating that the judge is partial.[18]

**Analysis**

A review of the "grounds" for recusal asserted by Debtor reveals that the motion contains nothing but "speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters." Debtor suggests this judge, in its decision issued July 15,

---

[16]*Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) ( *citing United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)). *See also Tonkovich v. Kansas Bd. of Regents*, 924 F. Supp. 1084, 1087-88 (D. Kan. 1996).

[17]*United States v. DeClerck*, 252 Fed. Appx. 220, 223, 2007 WL 3104596 at * 2 (10th Cir. 2007) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). *See also United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (holding that "when a judge's words or actions are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias") (*citing Liteky v. United States*, 510 U.S. at 554-56 and *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir.1997) (holding that "adverse rulings cannot in themselves form the appropriate grounds for disqualification.")).

[18]*McCann v. Commc'ns Design Corp*., 775 F. Supp. 1506 (D. Conn. 1991), *aff'd*, 35 F.3d 553 (2d Cir. 1994) and *In re Betts*, 143 B.R. at 1020 (holding that "[a] judge is presumed qualified to hear a proceeding and the movant has the burden of proving otherwise. A judge is not disqualified under section 455 merely because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial.") (internal citations omitted).

6

2008,[19] must have been biased, or she would not have made the findings she did. Without rewriting that decision here, the Court merely incorporates it by reference and concludes that the findings made therein were solely based on the evidence received, coupled with applicable law. Although the Court found that as between WNL, Koster and Mr. Friesen, Debtor's principal and agent, the Court tended to believe WNL and Koster's version of the events, neither the opinion, nor this Court's view of Friesen/Rafter Seven, come close to meeting the requirement that she display a "deep-seated favoritism or antagonism that would make fair judgment impossible." To the contrary, after evaluating the events occurring in this case, the Court finds that not only has Debtor not satisfied his high burden in seeking recusal, but probably as important, this Court has carefully looked at her decisions, and her actions, in this case and believes she has been, and will continue to be, fair in any further proceedings.[20]

Although this Court does not need to justify its conclusion that it has been, and will continue to be, fair and impartial, the Court notes that before this recusal motion was filed, but after the court issued its July 15, 2008 and September 19, 2008 rulings upon which Debtor relies to suggest bias, the Court was required to decide three related motions. The first was one filed by C.H. Brown to "Determine that Debtor's Use of Cash Assets of the Estate to Purchase Land at Public Auction is not in the Ordinary Course of Debtor's Business,

---

[19]Doc. 429.

[20]The Court has used this motion, and her research, to assist her in performing her "continuing duty to ask [herself] what a reasonable person, knowing all the relevant facts, would think about [her] impartiality." *United States v. Greenspan*, 26 F.3d 1001 at 1005.

7

and Requires Court Approval, After Notice, Which Has Neither been Sought nor Given."[21] The second was Debtor's Contingent Motion to Allow Debtor to Purchase the Friesen Homestead, Tract 3, at the Auction Sale to be Held November 19, 2008."[22] The third was Debtor's Motion for an Emergency Hearing, since the sale at issue was imminent. The Court ruled in Debtor's favor on all three motions,[23] demonstrating that the Court remains impartial, even after the trial resulting in the adverse ruling in July 2008.

The only other articulated basis for seeking recusal is the suggestion that this judge has prejudged an issue that is the subject of an upcoming hearing. Debtor states that this judge "pointed out that it had already decided the issue concerning Mr. Friesen's taking of the approximately $1,600 and depositing it into other accounts, and seemed to rely upon this finding (which was not at issue before the Court on the motion decided on July 15, 2008) in deciding the present matter." This bare assertion requires some context.

In describing the background for the Settlement Agreement that was the subject of the trial resulting in the July 2008 decision, the Court noted that certain trusts held by Mr. Friesen's children had abandoned their interest in the subject real estate. The Court then inserted a footnote, as follows:

> 14. Although the Trusts expressly relinquished whatever interest they had in the subject real estate, as noted in § 4(i) of the Court's Order, which fact was acknowledged when Mike Friesen approved the Settlement Agreement in his

---

[21]Doc. 486.

[22]Doc. 487.

[23]Doc. 494.

8

> capacity as the Trusts' representative, Mike Friesen nevertheless gave the money received from the 2006 wheat crop, pursuant to the terms of the Settlement Agreement, to the Trusts, and failed to report that income to the Chapter 12 Trustee. When WNL and Koster's counsel caught him doing this, he stated (during his deposition) that if "it's going to become a big deal" he'd return the money to the estate, where this Court finds it rightfully belongs. See Exhibit 2 to Koster's Memorandum in Support of Summary Judgment, at page 75 of deposition (page 19 of Exhibit 2). The Court assumes Mike Friesen will now promptly return that money to the Chapter 12 estate because consciously diverting property of the estate to someone not entitled to it is a "big deal."

Debtor suggests that a) this finding was not required by the issues, and b) shows bias. Debtor also claims that at a Scheduling Conference on the pending Motion to Dismiss or Convert by C.H. Brown, this judge said that she had already found that Mr. Friesen had given the money to his children's trusts, instead of depositing it into the debtor-in-possession account. Debtor argues that this finding of fact will predispose the Court in ruling on the pending Motion to Dismiss or Convert. In reality, the Court's finding that Mr. Friesen had deposited these funds in his children's trust accounts came after Mr. Friesen had admitted doing so, under penalty of perjury, on Rafter Seven's behalf. The Court also believed that estate funds should be immediately returned to the debtor-in-possession account, and should be properly reflected in required monthly accountings. The Court felt inclusion of this statement that the money must be placed in the correct account was the most expedient way of ensuring Debtor's principal knew that he had a fiduciary duty to ensure that estate funds were properly segregated and kept in an estate account.[24]

---

[24] The statement achieved its intended purpose, as Debtor thereafter filed a pleading stating "[a]pproximately $1,600 which the Debtor deposited with the trust, and which the Debtor never attempted to hide has been returned and is now in a separate certificate of deposit in the name of Rafter Seven Ranches." *See* Doc. 483.

9

Second, even though Debtor's principal admitted in his sworn deposition that he had deposited those funds in his children's account, the issue that is imminently before the Court is not whether he did so (since he admitted he did), but whether that act, coupled with numerous other issues raised by C.H. Brown,[25] justifies removal of Mr. Friesen pursuant to 11 U.S.C. §1204 (or whether the case should be converted to a Chapter 7 pursuant to 11 U.S.C. § 1208(d)).

The Court has not decided whether Mr. Friesen had good cause to originally deposit the money in his children's accounts,[26] and/or whether it was an innocent mistake that has since been corrected, both of which positions Mr. Friesen has variously asserted. In addition, the standard for removing Mr. Friesen under § 1204 is a stringent one. It requires that the court find cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the commencement of the case. The Court has not made any findings, or reached any conclusions, about that issue. The Court has found, based upon Mr. Friesen's sworn testimony, that the money was deposited in the wrong account, but nothing more. That finding in no way prejudges the issues remaining before the Court. And the Court has made no findings and reached no conclusions as to the reasons for Mr. Friesen's actions.

Finally, it is important to remember that

---

[25] *See* Doc. 515, Pretrial Order at pages 3-6.

[26] On August 26, 2008, Debtor indicated "[t]he Debtor believes that giving money to the trusts was proper and if deemed to be improper, such funds will be returned." By November 10, 2008, in Doc. 483 referenced in note 23, above, however, Debtor was no longer arguing the deposit to the children's trust was "proper," but that Debtor had, instead, complied with its obligation to place estate funds in an estate account.

10

> [a] court is not required to ignore facts heard in prior hearings in the bankruptcy case or proceedings. This may also extend to opinions expressed regarding prior or related cases, as in an individual debtor's actions with regard to a related, corporate bankruptcy. Thus, familiarity with a party or with the fact which arose from participation in an earlier judicial proceeding does not disqualify a judge from presiding at a later trial.[27]

Accordingly, the only other basis for seeking disqualification—that this Court has prejudged an issue, is simply incorrect, and does not properly support the Motion to Recuse.

## Conclusion

A judge is obligated to "perform the duties of the office impartially and diligently."[28] In addition, this Court wholeheartedly agrees with the statement by the Tenth Circuit Court of Appeals, in *United States v. Greenspan,*[29] that "[t]here are few characteristics of a judiciary more cherished and indispensable to justice than the characteristic of impartiality."[30] Furthermore, Congress has mandated, through enactment of 28 U.S.C. § 455, that justice must not only be impartial, but also that it must reasonably be perceived to be impartial. But a litigant does not have the right to seek recusal of a judge simply because the judge has ruled against him, or has found his prior testimony in the case to be less credible than the testimony of other witnesses.

This judge is the second judge to preside over this case. The first judge asked the case to be reassigned after Debtor's principal similarly questioned the impartiality of the first

---

[27]*Collier on Bankruptcy*, § 5004.01[1][a], at 5004-6 (15th ed. rev. 2002). (citations omitted).

[28]Code of Conduct for United States Judges, Canon 3 (1992).

[29]26 F.3d 1001, 1007 (10th Cir. 1994).

[30]*Id.*

11

judge,[31] who had rendered some decisions adverse to Debtor. Although this Court would carefully apply the standards for disqualification in any case, because this is the second request for a new judge in this case, the duty to do so is perhaps even heightened here. Finally, as noted above, a judge has as much obligation not to recuse herself where there is no reason to do so as she does to recuse herself when the converse is true. Because there is no reason to recuse, this judge declines to do so.

**IT IS, THEREFORE, ORDERED** that Debtor's Motion to Recuse is denied. The trial scheduled for January 12, 2008 will proceed as scheduled.

# # #

---

[31]Doc. 339, Order Returning Cases to Clerk for Reassignment, where the prior judge found that denial of informal request to recuse would likely result in delays not beneficial to either the Rafter Seven or the Michael Friesen (07-41616) estates.

12